Michael Paul Lowery, the appellant, was an inmate at Fountain Correctional Center. He was indicted and convicted for the unlawful possession of Valium, marijuana, and Tranxene in violation of Alabama Code § 20-2-70 (1975). He was sentenced as an habitual offender to thirty years' imprisonment. Lowery, who is representing himself on this appeal, raises three issues.
 I
Lowery argues that when the State failed to bring him to trial within ninety days of his request, the circuit court lost jurisdiction to try him at all. His argument is grounded on Alabama's Mandatory Disposition of Detainers Act found in Alabama Code § 15-9-80 through § 15-9-88 (1975). This Act relates exclusively to problems pertaining to interstate extradition. Morning v. State, 416 So.2d 780 (Ala.Cr.App. 1982); McAlpin v. State, 397 So.2d 209 (Ala.Cr.App.), cert. denied, 397 So.2d 211 (Ala. 1981). There is not even the contention that a detainer has ever been lodged against Lowery.
 II
Lowery contends that the controlled substances found on his person were improperly admitted into evidence because the chain of custody was broken and "the evidence is not the same."
On September 25, 1982, Correctional Officer Larry Weaver confiscated a small hand rolled marijuana cigarette and a plastic bag containing assorted pills from Lowery at Fountain Correctional Center. He placed the contraband in an envelope, labeled it, sealed it, and deposited it in an evidence locker in the warden's office.
Investigator MacArthur Davis had the only key to this evidence locker. On September 27th Davis retrieved the sealed envelope from the locker. Davis opened the envelope Weaver had sealed and "examined and verified the contents." He then placed this envelope and its contents inside another envelope and sealed it.
Davis delivered the envelope to the Toxicologist's Office in Mobile. He testified that he gave the envelope to "James Small, the best I can make — No. W.D. Sennett. Mrs. W.D. Sennett is the one that signed the receipt."
James Small testified that he received a sealed envelope from Davis on October 19, 1982. He "receipted for Mrs. Sennett" because she was the analyst on duty that day. Mrs. Sennett "got sick after this evidence came in" and Small turned it over to criminalist Taylor Noggle.
Noggle testified that he received a sealed envelope from Small on November 19, 1982. He retained custody until trial.
Lowery contends that the chain of custody was broken because Sennett never testified. See Mauldin v. State, 402 So.2d 1106
(Ala.Cr.App. 1981). The record does not support this contention.
"To establish a sufficient predicate for admission into evidence it must be shown that there was no break in the chain of custody. . . . Identification and continuity of possession must be sufficiently established to afford ample assurance of the authenticity of the item." Ex parte Yarber, 375 So.2d 1231,1234 (Ala. 1979). Here, the integrity of the envelope and its contents were proven and an accounting was made of each successive step in the handling of the evidence. Goodrum v.State, 418 So.2d 942 (Ala.Cr.App. 1982); Slaughter v. State,411 So.2d 819 (Ala.Cr.App. 1981). "The requirement of proper proof of custody finds its origin in the opportunities for tampering, contamination, and error, which arise when possession of a specimen cannot be accounted for at all times." A. Moenssens F. Inbau, Scientific Evidence In Criminal Cases, 342 (2d ed. 1978). "The purpose in establishing a chain of custody is to show a reasonable probability that the [evidence] was not tampered with." Bell v. State, 339 So.2d 96, *Page 899 
98 (Ala.Cr.App. 1976). "To warrant the reception of an object in evidence against an objection that an unbroken chain of custody has not been shown, it is not necessary that it be proved to an absolute certainty, but only to a reasonable probability, that the object is the same as, and not substantially different from, the object as it existed at the commencement of the chain." Sexton v. State, 346 So.2d 1177,1180 (Ala.Cr.App.), cert. denied, Ex parte Sexton,346 So.2d 1180 (Ala. 1977).
Here, each witness accounted for the integrity of the envelope he had received. There is no contention that the controlled substances were contaminated or altered in any way. Under these circumstances, we find no error in the admission of the controlled substances. Congo v. State, 409 So.2d 475
(Ala.Cr.App. 1981), cert. denied, Ex parte Congo, 412 So.2d 276
(Ala. 1982).
Moreover, the trial record contains no specific objection raising the ground asserted on appeal. In fact, the public defender who represented Lowery was willing to stipulate to the chain of custody but Lowery objected. After the State had almost completely established the chain the following occurred:
 "MR. LOVELACE (Public Defender): Your Honor, to save them time, we will stipulate that this was given to Mr. MacArthur Davis. It was given —
 "MR. HENDERSON (District Attorney): You will stipulate that this evidence here was taken from the defendant, dropped in the box and so forth?
"MR. LOVELACE: That's right.
"MR. HENDERSON: Well, the state —
 "THE DEFENDANT: I'm objecting to this whole proceeding. I'm objecting. Go ahead and bring your witnesses on out here."
 III
Lowery argues that in invoking the Habitual Felony Offender Act, the State did not prove that he was represented by counsel in his six prior convictions. Certified copies of court documents were introduced to prove the prior convictions. In each case, they reflect that Lowery was represented by counsel.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.