The petitioner, Darin Anthony "Rollo" Jones, was convicted of murder in the Circuit Court of Etowah County and was sentenced to life imprisonment. The Court of Criminal Appeals affirmed. The trial court had admitted as evidence the gun allegedly used by Jones. Jones claims that there was a break in the chain of custody of that gun and, therefore, that the trial court erred in allowing it into evidence.
On December 27, 1989, Ishmeal Ransaw, Kevin Traylor, Vada Samuels, and Willie Brown were riding around Gadsden, Alabama, in Traylor's automobile. They were looking for Glenn Williams for the purpose of inflicting some type of harm upon him. They stopped at Shaw's convenience store, where they saw Bobby Rudolph and Jones. Samuels told Jones that they were looking for Williams, and Jones responded by saying that he wanted "a piece of the action." Jones and Rudolph then got into Traylor's car.
Traylor drove to Jones's house, where Jones retrieved a shotgun from the trunk of another car. Jones got back into Traylor's car and they drove to a location near Carver Community Center; Samuels also had a shotgun with him. Brown got out of the car and subsequently began fighting with Williams. Ransaw testified that thereafter Jones got out of the car, placed his gun over the top of the car and fired at least two shots; Samuels also began firing shots.
Traylor then drove, with Rudolph, Jones, and Samuels, to Atlanta; on the way there, Jones stated "I got him. I got him," and also said that he had shot Williams first. Samuels stated that, as he and Brown were running off, Williams was calling his name, and that he went back and loaded one more shell and shot him again. Samuels also stated that he had hidden his gun by a Marvin's hardware store; on January 15, 1990, Samuels's gun was found beside a Marvin's hardware store.
During the trial, Ransaw identified State's exhibit number one as Samuels's gun and identified State's exhibit number 38 as the gun used by Jones. Faye Gary, a lieutenant with the Gadsden Police Department, testified that she received a telephone call on February 26, 1990, at her home, from a confidential informant; she said she met with the informant and at the meeting was given State's exhibit number 38. She testified that she took the gun home with her and kept it until 8:00 a.m. the next morning, when she carried it to city hall and gave it to Lieutenant Jeffrey E. Wright.
Lieutenant Gary testified that her informant told her that he was given this gun by an unidentified person and that this unidentified person told Gary that he had bought it for $5 from a small child who had seen it being put in a ditch behind the Carver Community Center. Gary also testified that when she turned the gun over to Lieutenant Wright, it was in the same, or substantially the same, condition as it was in when she received it from the informant.
Jones does not dispute the chain of custody of the gun after it was placed into officer Gary's custody. Jones contends only that there was insufficient testimony as to the whereabouts of the gun between the time of the offense and its initial delivery to Lieutenant Gary; therefore, he argues, there was a break in the chain of custody and the gun should have been excluded from evidence. The trial court admitted into evidence exhibit number 38 over Jones's chain-of-custody objection. Jones was found guilty of murder and was sentenced to life imprisonment. The Court of Criminal Appeals affirmed, stating in an unpublished memorandum opinion, 586 So.2d 304, that Jones's chain-of-custody argument was "without merit, because the chain of custody began when the shotgun was seized." We agree.
 " 'To warrant the reception of an object in evidence against an objection that an unbroken chain of custody has not been shown, it is not necessary that it be proved to an absolute certainty, but only *Page 212 
to a reasonable probability, that the object is the same as, and not substantially different from, the object as it existed at the commencement of the chain.'"
Laws v. State, 562 So.2d 305, 306 (Ala.Cr.App. 1990).
 " 'The purpose for requiring that the chain of custody be shown is to establish to a reasonable probability that there has been no tampering with the evidence. Williams v. State, 375 So.2d 1257
(Ala.Cr.App.), cert. denied, 375 So.2d 1271 (Ala. 1979); Tate v. State, 435 So.2d 190 (Ala.Cr.App. 1983); Smith v. State, 446 So.2d 68 (Ala.Cr.App. 1984). "The evidence need not negate the most remote possibility of substitution, alteration, or tampering with the evidence, but rather must prove to a reasonable probability that the item is the same as, and not substantially different from, the object as it existed at the beginning of the chain." Slaughter v. State, 411 So.2d 819, 822
(Ala.Cr.App. 1981) (emphasis supplied).'"
Williams v. State, 505 So.2d 1252, 1253 (Ala.Cr.App. 1986),aff'd, 505 So.2d 1254, 1255 (Ala. 1987). A gun is properly admitted into evidence when it is identified at trial as being the weapon used in the commission of the offense. Sumpter v.State, 480 So.2d 608, 613-14 (Ala.Cr.App. 1985).
Because there was no link missing from the chain of custody of exhibit number 38 and there was a positive identification of the shotgun by Ransaw, a witness to the murder who had personal knowledge of the gun that Jones took to the scene of the crime and which he saw Jones fire, the trial court correctly admitted the gun into evidence.
For the foregoing reasons, the judgment of the Court of Criminal Appeals is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, HOUSTON and STEAGALL, JJ., concur.